## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRAPHIC ARTS MUTUAL<br>INSURANCE COMPANY | : <br> : |
| | : |
| Plaintiff, | : |
| v. | : Civ. Action No. 1:06-CV-00246(JJF) |
| | : |
| INDIAN RIVER SCHOOL DISTRICT, | : |
| INDIAN RIVER SCHOOL BOARD, | : |
| HARVEY L. WALLS, MARK A. ISAACS, | : |
| JOHN M. EVANS, RICHARD H. COHEE, | : |
| GREGORY A. HASTINGS, NINA LOU | : |
| BUNTING, CHARLES M. BIRELEY, | : |
| DONALD G. HATIER, REGINALD L. HELMS, | : |
| M. ELAINE McCABE, LOIS M. HOBBS, | : |
| and EARL J. SAVAGE | : |
| | : |
| Defendants. | : |

### ANSWER TO COMPLAINT

Defendants, by and through their attorneys, Drinker Biddle & Reath LLP, hereby answer

Plaintiff's Complaint for Declaratory Relief and Restitution/Quantum Meruit. In support of their

Answer, the Defendants aver as follows:

### INTRODUCTION

1.    Denied. The averments in paragraph 1 constitute conclusions of law, and no

response is required. To the extent that a response is deemed to be required, the averments are

denied.

### PARTIES

2. – 4.    Admitted.

5.    Admitted in part; denied in part. Gregory A. Hastings and M. Elaine McCabe are

not members of the Indian River School Board ("Board"). The remaining averments set forth in

paragraph 5 are admitted.

6. – 7.        Admitted.

## JURISDICTION AND VENUE

8. – 11.        Admitted.

12.        Admitted in part; denied in part. It is admitted that venue is proper. To the extent that the averments in this paragraph state that the Defendants have engaged in actionable "acts or omissions," all such averments are denied.

## THE INSURANCE CONTRACT

13.        Admitted upon information and belief.

14.        Admitted upon information and belief. By way of further response, the insurance contract is a writing that speaks for itself. To the extent the averments in this paragraph contain characterizations that are contrary to or inconsistent with the terms of the insurance contract, all such averments are denied.

15. – 25.        The averments set forth in these paragraphs constitute conclusions of law to which no response is required. To the extent that a response is deemed to be required, all such averments are denied to the extent that they seek to characterize the Insurance Contract at issue in a manner that is inconsistent with the actual terms of the policy.

## THE DOBRICH LAWSUIT

26.        Admitted.

27.        Admitted in part; denied in part. It is admitted that Graphic Arts initially provided a defense to the Dobrich lawsuit. However, contrary to the terms and conditions of the Insurance Contract, Graphic Arts unilaterally and without reasonable justification ceased providing a defense and advised that it would not provide indemnity.

28. – 29.        Denied.

2

30.    Admitted in part; denied in part. It is admitted that the Answering Defendants dispute the coverage positions asserted by Graphic Arts. It is denied that averments in this paragraph constitute the whole of Answering Defendants claims. Answering Defendants counterclaims are set forth in detail below.

## COUNT I
## DECLARATORY JUDGMENT

31.    Answering Defendants incorporate each of their answers and denials to the above paragraphs as if set forth herein at length.

32.    The averments in paragraph 32 constitute conclusions of law, and no response is required.

33.    Admitted in part; denied in part. It is admitted that Graphic Arts seeks certain declarations. It is denied that Graphic Arts is entitled to such judicial declarations.

34.    Admitted in part; denied in part. It is admitted that Graphic Arts seeks certain declarations. It is denied that Graphic Arts is entitled to such judicial declarations.

35 – 36.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in these paragraphs.

## COUNT II
## RESTITUTION

37.    Answering Defendants incorporate each of their answers and denials to the above paragraphs as if set forth herein at length.

38.    Denied. By way of further response, Answering Defendants' demand for a defense in the Dobrich lawsuit is pursuant to the terms and conditions of the Insurance Contract.

39.    Denied.

40.    Denied.

3

## COUNT III
## QUANTUM MERUIT

41.     Answering Defendants incorporate each of their answers and denials to the above paragraphs as if set forth herein at length.

42.     Denied. By way of further response, Answering Defendants' demand for a defense in the Dobrich lawsuit is pursuant to the terms and conditions of the Insurance Contract.

43.     Denied. By way of further response, Answering Defendants have not breached the Insurance Contract in any manner.

44.     Denied.

45.     Denied.

### AFFIRMATIVE DEFENSES

46.     Plaintiff's complaint fails, in whole or in part, to state a claim upon which relief can be granted as to Answering Defendants.

47.     Answering Defendants did not breach any term of the Insurance Contract.

48.     Plaintiff's claims against Answering Defendants are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, and/or unclean hands.

49.     Plaintiff has failed to perform in accordance with the Insurance Contract, causing harm to the Answering Defendants.

50.     Graphic Arts has breached the Insurance Contract by failing to provide Answering Defendants with independent counsel in the Dobrich lawsuit.

51.     Graphic Arts has breached the Insurance Contract by revoking coverage based on the Indian River School Board's rejection of an unlawful and ill-advised settlement proposal.

4

52.    Graphic Arts has breached the Insurance Contract by refusing to provide a defense in the Dobrich lawsuit to Lois Hobbs and Earl Savage, who are administrators who did not vote on (and had no authority to vote on) the settlement proposal at issue here.

53.    Graphic Arts has breached the Insurance Contract by imposing conditions for coverage that are neither express nor implied in the Insurance Contract.

54.    Graphic Arts has anticipatorily breached the contract by unequivocally advising that it would not provide indemnity in the event that the Dobrich Defendants become legally obligated to pay monetary damages to the Dobrich Plaintiffs.

55.    Graphic Arts' conduct constitutes a breach of the implied covenant of good faith and fair dealing.

56.    Graphic Arts' unilateral termination of its defense obligations, for which Graphic Arts lacked a reasonable justification, constitutes insurance bad faith.

WHEREFORE, Answering Defendants respectfully request that the complaint in this matter be dismissed with prejudice, and that this Honorable Court enter an award in Answering Defendants' favor together with counsel fees, costs, and such other and further relief as this Court deems appropriate.

## COUNTERCLAIM AGAINST
## GRAPHIC ARTS MUTUAL INSURANCE COMPANY

The Indian River School District, the Indian River School Board, Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, Reginald L. Helms, M. Elaine McCabe, Louis M. Hobbs, and Earl J. Savage ("Counterclaim Plaintiffs"), by and through their attorneys, Drinker Biddle & Reath LLP, hereby bring these counterclaims against Graphic Arts Mutual Insurance Company, and in support thereof, aver as follows:

### INTRODUCTION

1.      This is a counterclaim against Graphic Arts Mutual Insurance Company. ("Graphic Arts"), which has committed multiple breaches and anticipatory breaches of an insurance policy issued to the Indian River School District ("District"). These breaches include the failure to provide independent counsel to the Counterclaim Plaintiffs in a lawsuit captioned *Dobrich, et al. v. Walls, et al.*, No. 05-120 (D. Del.) ("Dobrich lawsuit").

2.      In addition, although the proposed settlement of the Dobrich lawsuit included multiple non-monetary terms that Graphic Arts knew or should of known were wholly objectionable to the Counterclaim Plaintiffs and, in some cases, unlawful, Graphic Arts made little, if any, effort to involve the Counterclaim Plaintiffs in settlement discussions or the drafting of the settlement terms. In fact, despite the fact that the intended settlement terms were to include the adoption of four separate District policies, Graphic Arts never included the Indian River School Board ("Board") or the Board's policy committee in the drafting of such policies.

3.      After the Board declined to adopt the proposed settlement, Graphic Arts unilaterally terminated coverage with respect to the claims asserted in the Dobrich lawsuit as to all of the Dobrich Defendants. Graphic Arts' termination of coverage constituted a breach of the

6

insurance contract, an anticipatory breach of the insurance contract, and was wholly without justification.

4.    As a result of Graphic Arts' improper conduct, the Counterclaim Plaintiffs have suffered and will continue to suffer considerable monetary harm, including, but not limited to, the costs associated with defending the Dobrich lawsuit.

## PARTIES

5.    Counterclaim Plaintiff the Indian River School District is a public school district in Sussex County, Delaware. Indian River is the named insured under the insurance policy at issue here.

6.    Counterclaim Plaintiff Indian River School Board is a ten-member elected body that governs the Indian River school system. The Board is an additional insured under the insurance policy.

7.    Counterclaim Plaintiffs Harvey L. Walls, Mark A. Isaacs, John M. Evans, Richard H. Cohee, Gregory A. Hastings, Nina Lou Bunting, Charles M. Bireley, Donald G. Hattier, Reginald L. Helms and M. Elaine McCabe are (or were in the cases of Mr. Hastings and Ms. McCabe) members of the Board. Each of these Counterclaim Plaintiffs were members of the Board at the commencement of the Dobrich lawsuit, and they are each additional insureds under the policy.

8.    Counterclaim Plaintiff Louis M. Hobbs is the Superintendent of the District. Ms. Hobbs held this position at the commencement of the Dobrich lawsuit, and she is an additional insured under the policy.

9.     Counterclaim Plaintiff Earl J. Savage is the Assistant Superintendent of the

District. Mr. Savage held this position at the commencement of the Dobrich lawsuit, and he is an

additional insured under the Policy.

10.    Counterclaim Defendant, Graphic Arts Mutual Insurance Company is a mutual

insurance company organized under the laws of New York with a principal place of business at

180 Genesee Street, New Hartford, New York

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a)(1),

because it is between citizens of different states and the amount in controversy exceeds $75,000,

exclusive of interest and costs.

12.    This is an actual controversy between the Counterclaim Plaintiffs and Graphic

Arts, as set forth more fully herein, concerning their respective rights and obligations in

connection with the Policy. The action is properly brought under the Federal Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202.

13.    Venue exists in this Court pursuant to 28 U.S.C. § 1391, because a substantial part

of the events giving rise to the Counterclaim Plaintiffs' claim occurred in this District, and

Graphic Arts is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### A.     Insurance Policy

14.    Graphic Arts issued a comprehensive general liability insurance policy to the

District, bearing policy no. CPP 2054275 ("Insurance Contract"), which provided Commercial

General Liability Coverage ("CGL") and School District and Educators Legal Liability Coverage

8

("SDELL"). The effective dates of the Insurance Contract were from August 1, 2004 to August 1, 2005.

15.     The CGL coverage part A provided, in pertinent part, that Graphic Arts "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. [Graphic Arts] will have the right and duty to defend any 'suit' seeking those damages."

16.     The CGL coverage part B provided that Graphic Arts "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . .to which this insurance applies. [Graphic Arts] will have the right and duty to defend any 'suit' seeking those damages."

17.     The SDELL coverage provided, in pertinent part, that Graphic Arts "will pay for all 'loss' resulting from a 'claim' for a 'wrongful act' to which this insurance applies. [Graphic Arts] will have the right and duty to defend an 'insured' against any 'suit' seeking such 'loss.'"

**B.     Dobrich Lawsuit and Mediation**

18.     On or about February 23, 2005, the Mona and Marco Dobrich, in their individual capacities and on behalf of their minor child, as well as two "Doe" plaintiffs, individually and on behalf of their minor children ("Dobrich Plaintiffs"), commenced a lawsuit against the District, the Board, District Superintendent and Assistant Superintendent, and each of the members of the Board ("Dobrich Defendants").

19.     On or about March 30, 2005, Graphic Arts, as required by the Insurance Contract, retained John D. Balaguer of the law firm of White & Williams, and John F. Cafferkey of the law firm of Blankingship & Keith ("Insurance Counsel") to represent the Dobrich Defendants in that lawsuit.

20.     On June 13, 2005, discovery in the Dobrich lawsuit was stayed, and the matter was referred to Magistrate Judge Mary Pat Thynge for mediation.

21.     The parties attended the first mediation session on August 5, 2005. Although certain of the Dobrich Defendants attended the mediation session, Insurance Counsel did not solicit meaningful participation. Insurance Counsel did not meet with the Dobrich Defendants in advance of the mediation session. Nor did they attempt to obtain settlement authority from the Dobrich Defendants with respect to potential non-monetary terms of settlement.

22.     The parties attended a second mediation session on September 14, 2005. Again, Insurance Counsel did not meet with the Dobrich Defendants in advance of the mediation session or attempt to obtain settlement authority from the Dobrich Defendants regarding non-monetary settlement terms.

23.     The parties attended a third mediation session on November 10, 2005. At that session, Insurance Counsel reached an "agreement in principle" with the attorneys for the Dobrich Plaintiffs. It was understood that the settlement would involve a monetary payment to be paid by Graphic Arts and that the parties would enter into a comprehensive settlement agreement memorializing all of the terms of the settlement, which would include the re-writing of certain existing District policies as well as the creation of other District policies.

24.     Ms. Hobbs and the Board representatives who attended the mediation sessions advised Insurance Counsel that, to the extent that the proposed settlement were to contain additions to existing District policy or the creation of new District policy, all such policies would need to be approved by the full School Board.

25.     Over the course of the next three months, Insurance Counsel and the attorneys for the Dobrich Plaintiffs "negotiated" the non-monetary terms of the settlement agreement,

including the new District policies that would be attached to and a part of the settlement

agreement. In total, the proposed settlement contained four separate District policies, including a

policy on religion within the school and classroom setting, prayer at commencement exercises

and baccalaureate ceremonies, multi-step complaint procedures for violations of these policies,

and a policy relative to training programs ("Dobrich Settlement Policies").

      26.     Throughout the course of the negotiations concerning the Dobrich Settlement

Policies, Insurance Counsel did not request participation from the Board or the Board's policy

committee. Nor did Insurance Counsel solicit input from Lois Hobbs or Earl Savage, the school

administrators responsible for implementing District policy. The manner in which Insurance

Counsel negotiated the Dobrich Settlement Policies wholly disregarded the interests of the Board

in favor of the interests of Graphic Arts.

### C.     Proposed Dobrich Settlement

#### i.     Typical Procedures for Development of Board Policy

      27.     The obligation to develop District policy is granted by statute to the Indian River

School Board (and other school boards throughout the state) by virtue of 14 De. C. § 1049(2)

(2006). Delaware law provides that school boards shall, in addition to their other duties,

determine the educational policies of the school district and prescribe rules and regulations for

the conduct and management of the schools.

      28.     Since at least 1987, the Board and previous Indian River school boards, have

followed a specific procedure, codified in its administrative manuals, for the development of

District policies. In particular, District policy emanates from the Board Policy Committee,

which researches past practices, procedures, and the law relating to a policy under consideration.

The Board Policy Committee then proposes additions or amendments of current District policy

to the full Board for review. The Board typically adopts amendments to policies or new policies after two public readings of the proposed policy as well as the opportunity for public comment.

**ii.    Development of Dobrich Settlement Policies**

29.    Upon information and belief, Insurance Counsel and Graphic Arts reviewed drafts of the Dobrich Settlement Policies over a three-month period and exchanged multiple drafts of such policies (as well as the settlement agreement itself). However, Insurance Counsel never provided copies of the draft Dobrich Settlement Policies to the Board or the Board Policy Committee for review, consideration, or amendment.

30.    The process by which Insurance Counsel and the attorney for the Dobrichs developed the Dobrich Settlement Policies were inconsistent with the long-standing Board procedures regarding the development of District Policy as well as the Delaware statute conferring policy-making authority upon the Board.

**iii.    Rejection of Proposed Dobrich Settlement**

31.    On February 1, 2006, Insurance Counsel for the first time provided a copy of the proposed Dobrich settlement with the attached Dobrich Settlement Policies to Lois Hobbs and requested that they be distributed to the members of the Board in advance of a meeting that was to be held on February 9, 2006.

32.    Although the process by which the policies were developed was dubious, several members of the Board believed that the policies were reasonable drafts but needed further revisions before they were acceptable. The Board members had differing opinions regarding the policies, but one of the areas of concern with the Dobrich Settlement Policies was that they were unnecessarily restrictive and went well beyond what was constitutionally required. For example,

the proposed policy regarding religion in the school and classroom setting would have prohibited the mention of "Christmas Break" on District calendars.

33.    Several members of the Board believed that the Dobrich Settlement Policies should be modified, and that the Board Policy Committee should be permitted to review the Dobrich Settlement Policies in accordance with its ordinary procedures for adopting District Policy.

34.    In addition to their concerns about the Dobrich Settlement Policies (most of which could be resolved through relatively slight modifications), there were several aspects of the proposed settlement agreement that were objectionable.

35.    The proposed settlement agreement would have severely restricted the Board, as well as future school boards, from modifying the Dobrich Settlement Policies.  Paragraph 12 of the proposed settlement agreement provided as follows:

> The District will not revoke or amend the Policies (or any provision in the Policies), where such amendment would have the result of nullifying, negating, abrogating or annulling the Policies (or any provision in the Policies), unless the District must revoke or amend the Policies (or any provision in the Policies) so that the Policies conform with the explicit written requirement of a state or federal statute, or any decision, opinion, order or regulation issued by an agency with authority or court with jurisdiction over the District.

This provision would have unlawfully usurped the authority of this and future school boards from developing educational policy for the District, in conflict with the duties set forth in 14 De. C. § 1049(2) (2006).

36.    The proposed settlement agreement was also objectionable because it would have allowed the minor children of the Doe plaintiffs automatic admission to District arts schools with a competitive admissions process.  Paragraph 10 provided as follows:

> The Indian River School District and the Indian River School
> Board approve Jordan Doe's application to attend the Centre for
> the Visual and Performing Arts at Sussex Central High School for
> the 2006-2007 academic year. The Indian River School District
> and the Indian River School Board approve Jamie Doe's
> application to attend the Southern Delaware School of the Arts for
> the 2006-2007 academic year.

This term of the proposed settlement agreement was unacceptable because it disregarded the standing procedures for admission to the District's arts schools, which had waiting lists and required auditions as spaces became available. In addition, this term would have resulted in the denial or delay of admission to two non-plaintiff students seeking admission to the District's arts schools.

37.    In addition to these significant reservations concerning both the process and the substance of the proposed settlement, Board members wished to revise and modify other terms of the settlement, including, for example, the manner in which the policies would be disseminated, the provision regarding future lawsuits, and the application of the complaint procedures.

38.    After receiving the proposed settlement agreement with the attached Dobrich Settlement Policies, the Dobrich Defendants, through the District's legal counsel, inquired as to what impact the settlement would have upon coverage for a future lawsuit, as well as what would happen if the District did not accept the settlement as proposed.

39.    On February 3, 2006, Graphic Arts advised unequivocally that it expected the Board to ratify the proposed settlement and that it would deem a failure to do so as a violation of the Insurance Contract, resulting in the termination of coverage.

40.    In light of position taken by Graphic Arts, the February 9, 2006 meeting was postponed.

41.     On February 9, 2006, counsel for Graphic Arts objected to the cancellation of the February 9 meeting and reiterated Graphic Arts' position that the Board was obligated to accept the settlement proposal on a wholesale basis or that coverage under the Insurance Contract would terminate.

42.     On February 23, 2006, Insurance Counsel circulated a memorandum to the Board, acknowledging a conflict of interest because of the competing interests of Graphic Arts and the Dobrich Defendants.

43.     On February 27, 2006, the Board met formally to review the settlement proposal. Insurance Counsel attended the meeting and reiterated that the settlement proposal was not subject to modification or renegotiation. The Board thus unanimously voted to reject the settlement proposal.

44.     Following the vote by the Board, Graphic Arts advised that it would no longer provide a defense to the Dobrich Defendants and that it would not indemnify the Dobrich Defendants in the event that the Dobrich Defendants become legally obligated to pay money damages to the Dobrich Plaintiffs. The bases of Graphic Arts' position are the provisions of the Insurance Contract giving Graphic Arts the discretion to settle claims, as well as the insured's duty to cooperate.

45.     After becoming fully aware of the reasons for the Board's rejection of the proposed settlement, Graphic Arts has continued to refuse to provide a defense to the Dobrich Defendants and maintains that it has no indemnity obligation under the Insurance Contract.

## COUNT I
## BREACH OF CONTRACT

### All Counterclaim Plaintiffs v. Graphic Arts

46.    The Counterclaim Plaintiffs incorporate each of the averments set forth above in this Counterclaim as if set forth herein at length.

47.    Graphic Arts has a contractual duty pay for all loss resulting from a claim or wrongful acts to which the Insurance Contract applies. In addition, Graphic Arts has a "duty to defend an 'insured' against any 'suit' seeking such 'loss'".

48.    An insurer can satisfy its duty to defend either by providing and paying for *independent* counsel to defend the underlying suit, or by indemnifying the insured when it selects counsel of its choice. In this case, Graphic Arts has breached its duty to defend in two ways.

49.    First, although Graphic Arts retained attorneys to represent the interests of the Dobrich Defendants, the primary interests represented – at least during the mediation and settlement process – was that of Graphic Arts. Indeed, even Insurance Counsel ultimately acknowledged that that there was a conflict of interest. Graphic Arts breached its duty to defend by failing to provide independent counsel to represent the interests of its insureds and additional insureds.

50.    Second, after the Board rejected the proposed settlement, Graphic Arts refused even to pay the costs for Insurance Counsel. While Graphic Arts advised that it did not object to the Dobrich Defendants' continued use of Insurance Counsel, it advised that all costs associated with the representation would be borne by the Defendants.

51.    The Dobrich Defendants have requested that Graphic Arts pay the legal fees generated by Counsel of the Dobrich Defendants' choice, and Graphic Arts has refused.

52.    The basis of Graphic Arts' decision to cease providing a defense in the Dobrich lawsuit was the Board's decision to reject the proposed settlement. This was not a proper basis to cease providing a defense in the Dobrich lawsuit.

53.    As a result of Graphic Arts' improper and unlawful conduct, Counterclaim Plaintiffs have suffered damages because they have been forced to incur legal fees in defending the Dobrich lawsuit and in defending the lawsuit brought by Graphic Arts.

## COUNT II
## ANTICIPATORY BREACH OF CONTRACT

### All Counterclaim Plaintiffs v. Graphic Arts

54.    The Counterclaim Plaintiffs incorporate each of the averments set forth above in this Counterclaim as if set forth herein at length.

55.    The Insurance Contract provides that Graphic Arts will pay those sums that the insured and the additional insureds become legally obligated to pay as damages for claims and suits to which the Insurance Contract applies.

56.    To the extent that the Dobrich Plaintiffs are able to establish claims against the Dobrich Defendants, those sums may be within the coverage provided by the Insurance Contract. Despite, the clear terms of the Insurance Contract, Graphic Arts has advised unequivocally that, because of the Board's rejection of the proposed settlement, Graphic Arts will not make any indemnity payment on behalf of its insureds or additional insureds. Graphic Arts' refusal to meet its indemnity obligations constitutes an anticipatory breach of the terms of the Policy.

## COUNT III
## BREACH OF CONTRACT

### Hobbs and Savage v. Graphic Arts

57.    The Counterclaim Plaintiffs incorporate each of the averments set forth above in this Counterclaim as if set forth herein at length.

58.    Counterclaim Plaintiff Hobbs serves as the District's Superintendent, and Counterclaim Plaintiff Savage is the Assistant Superintendent. They are responsible for implementing policies approved by the Board. They do not have the authority to approve or reject policies. They did not vote on the settlement proposal at issue in the Dobrich lawsuit.

59.    Thus, even if Graphic Arts establishes that the Board, in rejecting the proposed settlement, violated the material terms of the Insurance Contract, Graphic Arts remains obligated to defend and indemnify Counterclaim Plaintiffs Hobbs and Savage.

60.    Graphic Arts' unilateral and wrongful refusal to defend or indemnify Hobbs and Savage constitutes a breach of the Insurance Contract.

## COUNT IV
## BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

### All Counterclaim Plaintiffs v. Graphic Arts

61.    The Counterclaim Plaintiffs incorporate each of the averments set forth above in this Counterclaim as if set forth herein at length.

62.    The law of Delaware recognizes an implied duty of good faith that applies to all contracts, including insurance contracts.

63.    The implied duty of good faith requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct that has the effect of preventing the other party to the contract from receiving the benefit of its bargain.

64.    Graphic Arts' discretion to settle claims and suits allows it to determine whether to pay a claim and/or to resolve a lawsuit with the payment of money to the claimant or plaintiff. The discretion to settle does not, explicitly or implicitly, give Graphic Arts the right to demand that the Board adopt specific District policies, to give up its statutorily-conferred right and duty to establish the educational policies for the District, or to demand any of the other objectionable settlement terms described above.

65.    Similarly, the duty to cooperate under the Insurance Contract does not require that the Board adopt specific policies for the District, surrender its right and duty to establish the educational policies for the District, or accept otherwise wholly objectionable settlement terms as described above.

66.    Graphic Arts has breached the covenant of good faith and fair dealing by taking advantage of its position to control implementation of the terms of the Insurance Contract, and by acting in a manner that fails to honor the reasonable expectations of its insured.

## COUNT V
## INSURANCE BAD FAITH

### All Counterclaim Plaintiffs v. Graphic Arts

67.    The Counterclaim Plaintiffs incorporate each of the averments set forth above in this Counterclaim as if set forth herein at length.

68.    The Insurance Contract provides two broad insurance benefits to insureds and additional insureds in the event of a covered claim or suit: 1) defense and 2) indemnity.

69.    Graphic Arts has an obligation to provide a defense with respect to the Dobrich lawsuit. Its refusal to provide such a defense – *i.e.*, by refusing to provide independent counsel and by refusing to pay the fees of counsel of the insured's choice – Graphic Arts is failing to

provide a benefit due under the Insurance Contract. As a result, the Dobrich Defendants have and will continue to incur costs and fees for which Graphic Arts is solely liable.

70.     There was no reasonable justification for Graphic Arts' decision to refuse its defense obligation under the Insurance Contract. As a result, Graphic Arts' conduct is in bad faith.

## COUNT VI
## DECLARATORY JUDGMENT

### All Counterclaim Plaintiffs v. Graphic Arts

71.     The Counterclaim Plaintiffs incorporate each of the averments set forth above in this Counterclaim as if set forth herein at length.

72.     Based on the foregoing, the Counterclaim Plaintiffs seek declarations as follows:

(a)     that Graphic Arts has materially breached the terms and conditions of the Insurance Contract by failing to provide independent counsel;

(b)     that Graphic Arts has materially breached the terms and conditions of the Insurance Contract conditioning coverage upon the approval of an ill-advised and partially unlawful settlement agreement as described above;

(c)     that Graphic Arts has a continuing obligation to defend and indemnify the Dobrich Defendants in the Dobrich lawsuit.

(d)     that Graphic Arts' discretion to settle claims and suits does not give Graphic Arts the right to demand that the Board adopt specific policies for the District, to give up its statutorily-conferred right and duty to establish the educational policies for the District, or to demand any of the other objectionable settlement terms described above;

(e)     that the insured's the duty to cooperate under the Insurance Contract does not require that the Board adopt specific policies for the District, give up its right and duty to

20

establish the educational policies for the District, or to accept otherwise wholly objectionable settlement terms;

       (f)      that Graphic Arts' conduct was in violation of the implied covenant of good faith and fair dealing;

       (g)      that Graphic Arts' conduct was in bad faith.

**WHEREFORE**, the Counterclaim Plaintiffs respectfully request that this Court enter judgment in their favor and against Graphic Arts, and enter an award as follows: (a) Declaring that Graphic Arts breached the terms and conditions of the Insurance Contract as set forth in Count VI; (b) payment of all fees and costs associated with the Dobrich lawsuit, including attorneys fees; (c) all other compensatory damages warranted under law; and (d) punitive damages as warranted by law.

Dated: June 13, 2006               DRINKER BIDDLE & REATH LLP

                                */s/ Warren Pratt*
                                Warren Pratt (DE Bar I.D. #4334)
                                Jason P. Gosselin (admitted *pro hac vice*)
                                1100 N. Market Street
                                Suite 1000
                                Wilmington, DE 19801-1243
                                (302) 467-4200
                                (302) 467-4201 fax

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GRAPHIC ARTS MUTUAL     :
INSURANCE COMPANY     :
    :
       Plaintiff,     :
   v.     : Civ. Action No. 1:06-CV-00246(JJF)
    :
INDIAN RIVER SCHOOL DISTRICT,     :
INDIAN RIVER SCHOOL BOARD,     :
HARVEY L. WALLS, MARK A. ISAACS,     :
JOHN M. EVANS, RICHARD H. COHEE,     :
GREGORY A. HASTINGS, NINA LOU     :
BUNTING, CHARLES M. BIRELEY,     :
DONALD G. HATIER, REGINALD L. HELMS,     :
M. ELAINE McCABE, LOIS M. HOBBS,     :
and EARL J. SAVAGE     :
    :
       Defendants.     :

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 13th day of June, 2006, I caused a true and correct copy of the Defendant's Answer to Complaint to be served in the manner indicated on the following parties:

**Hand Delivery**
Anthony G. Flynn
Timothy Jay Houseal
Jennifer M. Kinkus
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Dated: June 13, 2006

DRINKER BIDDLE & REATH LLP

_/s/ Warren Pratt_
Warren Pratt (DE Bar I.D. #4334)
Jason P. Gosselin (admitted *pro hac vice*)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1243
(302) 467-4200
(302) 467-4201 fax